E. H. VAVRA & CO. v. KALAMAZOO CARTON CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 12, 1919.)

No. 3239.

PATENTS ⚙═328—INFRINGEMENT; PAPER COATING MACHINE.

The Vavra patent, No. 1,198,976, for a machine for applying paraffine to paper, *held* not infringed.

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan; C. W. Sessions, Judge.

Suit in equity by E. H. Vavra & Co. against the Kalamazoo Carton Company and others. Decree for defendants, and complainant appeals. Affirmed.

John G. Elliott, of Chicago, Ill., for appellant.
Otis A. Earl, of Kalamazoo, Mich., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

DENISON, Circuit Judge. The complainant below appealed from a decree that the defendants did not infringe claim 1 of patent No. 1,198,976, issued September 19, 1916, to E. H. Vavra, upon a machine for applying paraffine to paper. The claim is quoted in the margin.[1]

The machine shown in the drawings comprises a tank filled with melted paraffine, forming a bath through which the paper is passed by suitable feed rollers. As the paper rises toward the top of the tank, it passes between two fabric-wrapped rollers of relatively large diameter, which are so spaced from each other as to permit the desired thickness of coating, and that only, to remain upon each surface of the paper. Since the desired coating is very thin, and the paper is likely to be somewhat compressed, the effective distance between these rollers is that, substantially, of uncompressed paper. Because they thus determine the thickness of the coating, and permit no more than this predetermined thickness to adhere to the paper as it leaves the tank, the patentee terms them "gage rollers." In the form shown, they are set horizontally. One of them is submerged, so that its upper surface is just about level with the surface of the bath, and the other is about half submerged. It results that the point where they come together and bite the paper and gage the coating is considerably below the top level of the bath. Since the rollers, at their ends, do not reach the sides of the tank, there is evidently a tendency for the melted paraffine to flow in from the ends between the rollers above the point of paper contact, and this would seem to destroy the gaging effect of the

[1] "Claim 1. A coating machine, comprising in combination a pair of contacting rollers, one of which rollers has its upper side located in a plane approximately that of the level of the coating material, and means for simultaneously rotating said rollers in opposite directions, whereby the coating material is prevented from overflowing said rollers, and their surface above their point of contact is utilized to gage the thickness of the coating adhering to the articles passing from contact with the rollers."

rollers and again submerge the paper; but it is said that, on account of the slowness with which the paraffine flows, the rapidity with which it cools, and the tendency of the outwardly revolving rollers to carry around with them such paraffine as does flow between their ends, this result does not happen, and the paraffine does not enter far enough from the ends of the rollers to reach the paper after it leaves the contact point between the rollers.

In defendants' device, the paper does not pass through the bath. The application of the paraffine and such gaging as there is are simultaneously accomplished by a set of two rollers, one directly above the other, and the under one of which has its lower part (less than half) revolving in the surface of the bath. Each of these rollers has a felt surface. The lower one, therefore, carries up a substantial quantity of the paraffine, and part of this is transferred to the surface of the upper roller, because they are in a pressure or squeezing contact with each other. The felt surface of both rollers being thus saturated, the paper is passed through, and a portion of the paraffine somewhat penetrates the paper, and another portion remains as a coating upon the outside. These rollers also wipe or squeeze off what would otherwise be superfluous paraffine, and prevent it from passing through between them. In the patentee's form, sheets of paper are to be fed continuously, without intervening spaces; while in defendants' form, the paper must be in short pieces, with enough spaces between them, as they progress, so that the lower roller may in the intervals transfer to the upper a sufficient quantity of the wax.

It is manifest that this form does not meet the terms of the claim. The claim language clearly fits only a construction where the bite of the rolls is below the surface of the bath. It is the "rotating said rollers in opposite directions," which is the operation referred to in the first word of the functional clause, "whereby the coating material is prevented from overflowing said rollers," and it could not be more plainly said that the rollers are so located that the melted wax would overflow them except for their rotation. In addition is the express statement that one of the rollers is substantially submerged.

Comparison with other claims does not militate against this limitation. There is no other claim which is not distinguishable from this in the precision with which the rollers are located. The others, referred to, definitely fix both rollers, instead of one.

To meet this obvious difficulty, plaintiff insists that the real invention lay in the gaging function of the rollers; that, for this purpose, it was immaterial where they were placed with reference to the bath; that the specification contemplated a vertical adjustment of these rollers; and, hence, that the claim is entitled to a breadth of construction which would make the defendants' form an equivalent. We are not able to accede to this insistence. A vertical adjustment is contemplated, but its operating purpose is that of accommodating them to the rise and fall of the level of the bath, so as to maintain both rollers always in substantially the partially submerged condition shown. The gaging function was not new with Vavra. Every set of rollers through which the paper passed shortly after emerging from

the paraffine was necessarily a gaging set, and rolls of this character are shown in several former patents. Plaintiff argues that the "gaging" of the patent is the sponge-like and absorbent action of the felt surface above the point of greatest squeeze; but this action is not suggested in the specification or the claim in suit. Such definition as the specification gives of "gaging" is to the contrary; and, if such action exists, it was not new with Vavra. A felt or similar surfacing of the rollers was a common earlier expedient.

It seems plain enough that passing the paper through a bath was an efficient and desirable method of causing a paraffine coating and some penetration, and that a squeezing away of the excess, or a gaging, was a necessary subsequent operation, but that even a slight interval between the first operation and the second was somewhat objectionable, because of the tendency to set. We think that, in view of the state of the art, Vavra's only inventive thought was that he could move the squeezing or gaging rollers down into the bath, and still prevent the paraffine from flowing back onto the paper above the gaging point. His claim uses apt terms to specify this thought and the mechanism for accomplishing it; and, even if the express and careful limitation of the claim language to this form could be overlooked, the theory of equivalency cannot be permitted to carry the claim beyond the scope of the actual invention.

The decree must be affirmed.